# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| COURTNEY PACKNETT | CIVIL ACTION |
| VERSUS | NO. 06-5973 |
| N. BURL CAIN, WARDEN | SECTION "C" |

## <u>ORDER AND REASONS</u>

Before the Court is a petition for *habeas corpus* by Courtney Packnett ("Petitioner"),
filed pursuant to 28 U.S.C. § 2254. Petitioner is seeking relief from his January 15, 2003
conviction for distribution of cocaine within 1000 feet of a school under LA. REV. STAT. §
40:981.3,  for which, after a multiple bill hearing, he was sentenced to thirty-six (36) years in
prison, without the benefit of parole, probation, or suspension, according to the Louisiana
Habitual Offender Law, LA. REV. STAT. § 15:529.1. On direct appeal, the Louisiana Fifth Circuit
Court of Appeal affirmed the sentence, but remanded to the district court because only the first
two (2) years of the enhanced sentence were to be served without the benefit of parole. Petitioner
is currently incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. As grounds for
relief, Petitioner claims that he was denied his due process and equal protection rights when the
trial court: (1) allowed Daniel Waguespack to be qualified as an expert witness; (2) chastised

1

Petitioner for raising an objection; (3) abused its discretion by denying a motion to suppress as moot. Additionally, Petitioner claims that he received ineffective assistance of counsel because his attorney: (1) failed to hire an independent expert to test the seized substance for cocaine; (2) failed to object to Agent Wilson's testimony that the videotape depicted actual distribution, as well as the officer's observation that Petitioner took the crack cocaine out of his mouth before handing it to the undercover officer; (3) failed to object to the introduction of evidence that Petitioner was allegedly in possession of a marked $20 bill; (4) failed to use the police report to impeach the police officer's testimony; (5) stipulated to the qualifications of the state's expert witness. Moreover, Petitioner claims that the prosecutor committed misconduct, and that the cumulative nature of the errors committed during trial violated his due process and equal protection rights.[1] For the reasons set forth below, this petition is **DENIED WITH PREJUDICE**.

I. CASE HISTORY

On July 25, 2002, the Jefferson Parish District Attorney filed a bill of information charging defendant, Courtney Packnett, with distribution of cocaine within one thousand feet of Saint Joseph the Worker Church in violation of LA. REV. STAT. § 40:981.3. *State v. Packnett*, 873 So.2d 789, 790 (La.App. 5 Cir. 2004). Petitioner moved to suppress physical evidence and at the hearing on the motion on December 19, 2002, the prosecution claimed nothing was seized from the Petitioner. State Rec., Vol. 1, Clerk's Minute Entry. On that basis, the trial court declared the motion moot. *Id.* Following a trial on January 14 and 15, 2003, Petitioner was

---

[1] The presentation of Petitioner's claims for relief have been re-ordered for organizational purposes.

convicted on Count 1 and sentenced to ten (10) years at hard labor. State Rec. Vol. 1, Clerk's

Minute Entry, p. 74. Following a Multiple Bill hearing on September 30, 2003, the Petitioner

was adjudged a fourth offender; and, the court set aside the original ten (10) year term,

sentencing Petitioner to thirty-six (36) years in prison, without the benefit of parole, probation,

or suspension of sentence. State Rec. Vol. 1, Clerk's Minute Entry, p. 100. The Louisiana Court

of Appeal for the Fifth Circuit summarized the facts of the case during Petitioner's direct appeal

as follows:

> Agent Corey Wilson of the Jefferson Parish Sheriff's Office testified that the
> Narcotics Division received several complaints from residents regarding drug
> sales in the area of Ames Boulevard between Fourth Street and the Westbank
> Expressway in Marrero. In response to those complaints, Wilson sent Agent
> Allison Dugas to that area on the afternoon of March 1, 2002 to attempt
> undercover drug purchases.
>
> Agent Dugas, who uses the name Megan Carter when working undercover, was
> assigned an unmarked police car equipped with video and audio recording
> equipment. The equipment allowed backup officers to monitor her actions. Agent
> Dugas was also given currency with prerecorded serial numbers with which to
> make drug purchases.
>
> Agent Dugas testified that at 1:50 p.m., she was inside of her vehicle in the
> parking lot of the St. Joseph the Worker School/Church complex. The property
> was designated as a drug-free zone. She was positioned one hundred eighty-seven
> feet from Ames Elementary School. She purchased a rock of crack cocaine for
> twenty dollars from defendant, Courtney Packnett. Agent Wilson and other
> surveillance officers were in the area, but were not in a position to see the
> transaction. The entire transaction was, however, recorded on videotape.
>
> Upon completing the transaction, Agent Dugas met with Agent Wilson. She gave
> him an off-white rock. Dugas gave Wilson a description of the man from whom
> she had purchased the rock. Wilson located the man twenty to thirty minutes later,
> and conducted a field interview with him. The man identified himself as Courtney
> Packnett. Wilson completed a field interview card with defendant's personal
> information. Agent Wilson testified that he conducted a pat-down search of
> defendant's outer clothing for his own safety. Wilson stated that a pat-down is
> routine procedure during a field interview. According to Wilson, Packnett
> removed the contents of his pockets and put his belongings on the officer's car.
> Among those items was one of the marked twenty-dollar bills given to Dugas

earlier that day. Agent Wilson performed a field test on the rock Dugas had purchased. The result was positive for cocaine.FN2

   FN2. At the beginning of trial, the attorneys entered into a stipulation that, if Daniel Waguespack were to testify, he would be qualified as an expert witness in the field of forensic chemistry and would testify that he had tested State's Exhibit 1 and found it to be cocaine.

Based on the information he received from Agent Dugas and from defendant, Agent Wilson compiled a photographic lineup. At 3:45 p.m. on March 1, 2002, Agent Wilson presented the lineup to Agent Dugas. Dugas identified Packnett as the person from whom she had purchased the cocaine. Dugas also identified Packnett in court as the person who had sold her the cocaine. Wilson testified that Packnett's arrest was delayed until a later date so that the nature of the undercover investigation would not be exposed.

*State v. Packnett*, 873 So.2d 789, 791-92 (La.App 5 Cir. 2004).

The Louisiana Fifth Circuit Court of Appeal affirmed Petitioner's sentence on April 27, 2004. *Id.* at 795. Yet, the Louisiana Fifth Circuit also remanded the case to the trial court regarding the denial of parole eligibility. *Id.* The trial court was instructed to "to amend the habitual offender commitment to show that defendant's enhanced sentence is to be served without benefit of probation or suspension of sentence and that the first two years of his sentence is to be served without benefit of parole." *Id.*

On May 7, 2004, the trial court amended the sentence in accordance with the appellate court's directive. State Rec., Vol. 1, Order Amending Multiple Bill Commitment. Under the old LA.C.CR.P. ANN. Art. 914, Petitioner was given five (5) days to appeal the amended sentence, and two (2) years after the judgment became final to seek post-conviction relief. *Id.* This Court notes that LA.C.CR.P. ANN. Art. 914 was amended on July 1, 2003, changing the window for a timely appeal from five (5) days to thirty (30) days. The amendment is "apparently" subject to retroactive application. *State v. Guerra*, 865 So.2d 154, 156 n. 3 (La.App. 5 Cir. 2003).

4

However, Petitioner did not file a new appeal, but rather applied to the Louisiana Supreme Court for a Writ of Certiorari on August 16, 2004.[2] State Rec., Vol. 4, Petition for Writ of Certiorari.

On June 24, 2005, the Louisiana Supreme Court denied Petitioner's Writ citing La.C.Cr.P. Art. 930.3 and *State ex rel. Melinie v. State*, 93-1380 (La.1/12/96), 665 So.2d 1172. *State ex rel. Packnett v. State*, 904 So.2d 736 (La. 2005). It is important to note that La.C.Cr.P. Art. 930.3 outlines the grounds for relief in **post-conviction** proceedings; and, in *State ex rel. Melinie*, the Louisiana Supreme Court ruled that a petitioner could not claim excessiveness of sentence in **post-conviction** proceedings. Thus, the Louisiana Supreme Court considered Petitioner's August 16, 2004 application for a Writ of Certiorari as a post-conviction proceeding, instead of a continuation of Petitioner's direct appeal.

Subsequently, Petitioner filed an application for post-conviction relief with the trial court on March 21, 2005. State Rec., Vol. 2, Application for Post-Conviction Relief. On March 29, 2005, the trial court denied Petitioner's application for post-conviction relief. Petitioner applied to the Louisiana Fifth Circuit court for review; the Louisiana appellate court denied Petitioner's application for Post-Conviction Relief May 6, 2005. State Rec. Vol. 4, Order of the Fifth Circuit Court of Appeal. Finally, the Louisiana Supreme Court denied Petitioner's Application for Supervisory and/or Remedial Writs regarding his application for post-conviction relief on March 17, 2006. *State ex rel. Packnett v. State*, 925 So.2d 537 (La. 2006). Petitioner filed the instant *habeas* petition on August 31, 2006.

## II. PROCEDURAL REVIEW

---

[2] Thus, Petitioner's application to the Louisiana Supreme Court for a Writ of Certiorari would still be untimely under the revised version of LA.C.CR.P. ANN. Art. 914..

### A. Custody

A petitioner must be "in custody" for a federal court to entertain a petition for habeas relief. 28 U.S.C. § 2241(c); 28 U.S.C.§ 2254(a). Physical incarceration satisfies the custody requirement. *See e.g., Maleng v. Cook*, 490 U.S. 488, 491 (1989). Here, Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana. Thus, Petitioner is in custody for the conviction he is attacking. Accordingly, one basis of this Court's subject matter jurisdiction over Petitioner's claim for relief is satisfied.

### B. Venue

Under 28 U.S.C.A. § 2241(d), venue lies in the district in which the Petitioner is incarcerated or the district from which his conviction or sentence was obtained.  Petitioner is incarcerated at the Louisiana State Penitentiary in Angola, Louisiana, which is in West Feliciana Parish, a parish that falls within the Middle District of Louisiana under 28 U.S.C. § 98(b). However, Petitioner was convicted and sentenced in Jefferson Parish, which under 28 U.S.C. § 98(a) falls within the Eastern District of Louisiana.  Therefore, venue lies for this petition under 28 U.S.C.A § 2241(d).

### C. Timeliness

This Court finds that Petition's request for *habeas* relief is timely. The Anti-terrorism and Effective Death Penalty Act of 1996[3] ("AEDPA") requires that a *habeas* petitioner bring his or her 28 U.S.C.§ 2254 action within one year of the date on which his or her conviction or sentence becomes "final."[4] Yet, AEDPA's one-year statute of limitations is tolled for the period

---

[3] Pub. L. 104-132, Apr. 24, 1996, 110 Stat. 1214.

[4] 28 U.S.C.§ 2254(d) provides:
    (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The

of time during which a properly filed application for state post-conviction relief or other collateral review attacking a conviction or sentence is pending in state court. 28 U.S.C.§ 2254(d)(2); *Fields v. Johnson*, 159 F.3d 914 (5th Cir. 1998). Furthermore, "a properly filed application is one submitted according to the state's procedural requirements, such as the rules governing notice and the time and place of filing." *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999) (quoting *Lovasz v. Vaughn*, 134 F.3d 146, 148 (3rd Cir. 1998) (internal quotations omitted); *Williams v. Cain*, 217 F.3d 303 (5th Cir. 2000). Finally, out of an abundance of caution, this Court construes any tolling ambiguities in favor of a petitioner. *See e.g., Navarre v. Stalder,* 2007 WL 1702774, *5 (E.D.La. 2007).

The Supreme Court has ruled that "finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay v. United States*, 537 U.S. 522, 527 (2003); *see also, Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir. 2003). As noted above, the Louisiana Court of Appeal affirmed Petitioner's sentence on April 27, 2004. Petitioner had "within thirty days of the mailing of the notice of the original judgment of the court of appeal" to make his application to

---

limitation period shall run from the latest of –
    (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
    (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
    (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
    (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

the Louisiana Supreme Court. LA.Supr. Ct. R. X, § 5(a). Yet, Petitioner did not file his Writ with the Louisiana Supreme Court until August 16, 2004. In this case, Petitioner allowed the time for seeking further direct review to expire, and thus, the plain language of 28 U.S.C. § 2244(d)(1)(A) establishes that AEDPA's one-year limitations period started to run on May 27, 2004, which is "the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A); *Roberts v. Cockrell*, 319 F.3d 690, 694 (5th Cir.2003) Therefore, pursuant to 28 U.S.C. § 2244(d)(1)(A), AEDPA's limitations period commenced on May 27, 2004.

The Fifth Circuit has addressed the issue of whether Petitioner's out-of-time filing for a supervisory writ with the Louisiana Supreme Court had any impact on the either the commencement or the running of the AEDPA's limitations period. *McGee v. Cain*, 104 Fed.Appx. 989, 991 (5th Cir. 2004) (relying on *Salinas v. Dretke*, 354 F.3d 425 (5th Cir. 2004) for the proposition that an out-of-time petition for discretionary review  tolls the AEDPA's statute of limitations, but it does not require a federal court to restart the AEDPA's limitations period altogether). In this case, the AEDPA's statute of limitations was tolled when Petitioner filed his untimely writ with the Louisiana Supreme Court on August 16, 2004. And, the AEDPA's limitations period remained tolled until June 24, 2005 when the Louisiana Supreme Court denied Petitioner's writ. Additionally, Petitioner "properly" filed for post-conviction relief with the trial court on March 21, 2005. Thus, there were overlapping tolling periods in this case, and the AEDPA remained tolled under 28 U.S.C. § 2244(d)(2) until the Louisiana Supreme Court denied Petitioner's properly filed writ on March 17, 2006. As noted above, Petitioner filed his *habeas* petition on August 31, 2006.

In this case, 248 untolled days elapsed between May 27, 2004 (the time Petitioner's sentence became "final") and August 31, 2006 (when Petitioner filed for *habeas* relief in this

Court). The overlapping periods for the out-of-time and "properly" filed post-conviction relief applications allowed the AEDPA's statute of limitations to remain tolled from August 16, 2004 through March 17, 2006. Thus, the *habeas* petition is timely.

### D. Exhaustion

Generally, exhaustion of adequate state remedies is a "condition precedent to the invocation of federal judicial relief under [28 U.S.C.§ 2254]." *Preiser v. Rodriquez*, 411 U.S. 475, 489 (1973). The entirety of the factual allegations and legal theories presented to the federal court must have been presented in a procedurally proper manner to the highest state court, here the Louisiana Supreme Court. *See e.g., Anderson v. Harless*, 459 U.S. 4, 6 (1982) (holding a habeas petitioner must have "fairly presented" to the state courts the "substance" of his federal *habeas corpus* claim) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971); *Yohey v. Collins*, 985 F.2d 222, 226 (5th Cir. 1993); *Rose v. Lundry*, 455 U.S. 509 (1982). It is important to note that the issues in a habeas petition could have been presented to the highest state court on direct appeal, or in a state post-conviction proceeding; either is sufficient and both are not required. *Brown v. Allen*, 344 U.S. 443, 447 (1953); *Myers v. Collins*, 919 F.2d 1074, 1075-77 (5th Cir. 1990). The requirement of exhaustion is now codified by 28 U.S.C.§ 2254(b)(1), which provides, *inter alia*, that habeas relief "shall not be granted unless it appears that . . . (A) the applicant has exhausted the remedies available in the courts of the State. . . ." The other provisions providing exceptions to this general rule are inapplicable here.

Here, the Court finds that Petitioner's claims are exhausted as required by AEDPA. In this case, the State failed to address whether Petitioner exhausted his claims in state court. However, an independent review regarding the exhaustion of Petitioner's claims found that the

claims were presented with the same factual and legal articulation to the Louisiana Supreme Court as they appear before this court. Compare State Rec. Vol. 2, Petitioner's Uniform Application for Post-Conviction Relief, with Fed. Rec., Petition for *Habeas Corpus*. Thus, Petitioner's claims are ripe for review.

### III. STANDARD OF REVIEW

AEDPA revised 28 U.S.C.§ 2254(d)(1) and (2), furnishing new standards of review for questions of fact, questions of law, and mixed questions of law and fact for habeas petitions. The statute now provides that if a state court has adjudicated a claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under 28 U.S.C.§ 2254(d)(1). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). And, questions of fact are reviewed under 28 U.S.C.§ 2254(d)(2). *Id.*

Regarding questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C.§ 254(d)(1).  The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one. *Bell v. Cone*, 535 U.S. 685, 694 (2002) (internal citations omitted).

As to questions of fact, a state court's factual findings are presumed to be correct and a federal court "will give deference to the state court's decision unless it was based on an

10

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Hill*, 210 F.3d at 485; 28 U.S.C.§ 2254(e)(1).

## IV. PETITIONER'S CLAIMS

### A. Trial Court Errors

As his first claim for relief, Petitioner asserts that the trial court erred when it accepted a stipulation qualifying Daniel Waguespack as an expert. Additionally, Petitioner claims that the trial court erred when the judge chastised him for making an objection during the trial. Finally, Petitioner argues that the trial court abused its discretion by declaring his motion to suppress to be moot. In opposition, the state notes that the trial court reviewed these issues in Petitioner's post-conviction relief application, and rejected the claims as procedurally barred under Louisiana Code of Criminal Procedure Art. 930.4(F). As such, the state avers that this Court is prohibited from reviewing these claims because the last reasoned state court decision denied relief on independent and adequate state law grounds.

The United States Fifth Circuit Court of Appeals has set forth the standards to use when analyzing whether a claim is procedurally barred:

> A claim that a state has withheld a federal right from a person in its custody may not be reviewed by a federal court if the last state court to consider that claim expressly relied on a state ground for denial of relief that is both independent of the merits of the federal claim and an adequate basis for the court's decision ... This rule applies to state court judgments on both substantive and procedural grounds. Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim are presumed to rest upon the same ground.

*Finley v. Johnson*, 243 F .3d 215, 218 (5th Cir.2001) (citations omitted). Additionally, "[w]hen the state court has relied on an independent and adequate state procedural rule, federal habeas review is barred unless the petitioner demonstrates either cause and prejudice or that a failure to address the claim will result in a fundamental miscarriage of justice." *Hughes v. Johnson*, 191 F.3d 607, 614 (5th Cir.1999).

For a Petitioner "[t]o establish cause for a procedural default, there must be something external to the petitioner, something that cannot fairly be attributed to him." *Johnson v. Puckett*, 176 F .3d 809, 816 (5th Cir.1999) (internal quotations omitted). Additionally, to establish a "fundamental miscarriage of justice," the petitioner must "make a persuasive showing that he is actually innocent of the charges against him. Essentially, the petitioner must show that, as a factual matter, he did not commit the crime for which he was convicted." *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001) (citations omitted).

Louisiana Code of Criminal Procedure Article 930.4 outlines a court's duties for repetitive applications for post-conviction relief.[5] Evidently, the trial court concluded that Petitioner's application for post-conviction relief was repetitive because the Louisiana Supreme Court treated Petitioner's out-of-time appeal as if it was an application for post-conviction relief. Thus, the state court rejected Petitioner's claims based on a procedural rule. This Court notes that "[a] federal court reviewing a state prisoner's habeas claim must respect a state court's determination that the claim is procedurally barred under state law." *Williams v. Cain*, 125 F.3d 269, 275 (5th Cir. 1997) (citing *Wainright v. Sykes*, 433 U.S. 72, 90-91 (1977).

---

[5]  Part (F) states, "If the court considers dismissing an application for failure of the petitioner to raise the claim in the proceedings leading to conviction, failure to urge the claim on appeal, or failure to include the claim in a prior application, the court shall order the petitioner to state reasons for his failure. If the court finds that the failure was excusable, it shall consider the merits of the claim." La.C.Cr.P. Art. 930.4(F).

In this case, Petitioner cannot meet the "cause and prejudice" test, nor has Petitioner offered evidence of actual innocence. First, Petitioner has not asserted that there was any external cause for the procedural default regarding the repetitiveness of his claims. Furthermore, this Court is not convinced that the state court judge's acceptance of a stipulation regarding Mr. Waguespack's qualifications violates Petitioner's federal rights. Petitioner has offered no evidence to show that Mr. Waguespack was unavailable; moreover, Petitioner has not asserted that Mr. Waguespack is unqualified to testify as an expert regarding the chemical makeup of the substance.[6] Additionally, the trial court's admonishment of Petitioner's objection occurred outside of the jury's presence. Thus, the record does not support Petitioner's claim that the admonishment resulted in a fundamentally unfair trial.

Finally, this Court must determine whether it is barred by *Stone v. Powell* from reviewing Petitioner's Fourth Amendment claim regarding his motion to suppress. In *Stone*, the United States Supreme Court held:

> where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.

*Stone v. Powell*, 428 U.S. 465, 481-482 (1976) (footnote omitted).

In interpreting *Stone*, the Fifth Circuit has stated that an "opportunity for full and fair litigation means just that: an opportunity." *Janecka v. Cockrell*, 301 F.3d 316, 320 (5th Cir.2002), cert. denied, 537 U.S. 1196 (2003) (quoting *Caver v. Alabama*, 577 F.2d 1188, 1192 (5th Cir.1978) (internal quotations omitted). Moreover, even if a defendant fails to take advantage of his opportunity to litigate his Fourth Amendment claim, the fact that the

---

[6] A review of Louisiana case law shows that Daniel Waguespack has been qualified as an expert in the field of forensic science in at least twenty-eight (28) trials.

opportunity was there suffices for the *Stone* bar to apply. *Janecka*, 301 F.3d at 320. Furthermore, the Fifth Circuit has held that the *Stone* bar applies despite an error by the state court in deciding the merits of a Fourth Amendment claim. *Swicegood v. Alabama*, 577 F.2d 1322, 1324-1325 (5th Cir. 1978).

In this case, petitioner was deprived of a full and fair opportunity to litigate his Fourth Amendment claim in state court. At the outset of the Motion to Suppress Hearing, the prosecutor disingenuously stated that there was "no evidence seized from the person of the defendant." State Rec., Vol. 2, Motion to Suppress Hearing, p. 4. Based on that representation, the trial court judge agreed with the prosecutor that the motion to suppress evidence "did not lie." *Id.* However, Petitioner had been detained by the police shortly after the transaction occurred with the undercover agent, and the police in fact took a $20 bill from the person of the defendant, wrote down the bill's serial number, then apparently returned the bill to the defendant. This information was not disclosed to the trial judge at the motion hearing, so Petitioner did not have an opportunity to litigate his Fourth Amendment rights regarding the $20 bill's serial number. Therefore, Petitioner's allegation that the Louisiana courts deprived him of the opportunity to raise his Fourth Amendment claim has merit. Accordingly, this Court is not barred by *Stone* from reviewing Petitioner's Fourth Amendment claim.

Yet, Petitioner still faces the procedural bar articulated in *Finley v. Johnson* regarding his Fourth Amendment claims. Again, the trial court rejected Petitioner's Fourth Amendment claims based on a state procedural rule. Therefore, Petitioner must overcome the "cause and prejudice" test to merit relief on this claim. Petitioner has not asserted that there was any outside cause for the repetitiveness of his claims. Additionally, given the strength of the evidence against Petitioner, he is not able to make a persuasive showing that he is actually innocent of the charges

14

against him. Consequently, Petitioner's claims regarding errors by the trial court judge are barred from review by *Finley v. Johnson*. Accordingly, petitioner's claims for *habeas* relief are denied on this ground.

### B. Ineffective Assistance of Counsel

Petitioner alleges five (5) grounds for his ineffective assistance of counsel claim. In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel. A petitioner seeking relief must demonstrate both (1) counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. *Styron v. Johnson*, 262 F.3d 438, 450 (5th Cir.2001), cert. denied, 534 U.S. 1163 (2002). "Counsel's performance is deficient if it falls below an objective standard of reasonableness." *Little v. Johnson*, 162 F.3d 855, 860 (5th Cir.1998). An analysis of an attorney's performance must take into account the reasonableness of counsel's actions in light of all the circumstances. *Strickland*, 466 U.S. at 689. "[I]t is necessary to judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Lockhart v. Fretwell*, 506 U.S. 364, 371 (1993) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Crockett v. McCotter*, 796 F.2d 787, 791 (5th Cir.1986); *Mattheson v. King*, 751 F.2d 1432, 1441 (5th Cir.1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different." *Strickland*, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* Indeed, the Fifth Circuit has adopted the Strickland test holding: "[d]eficient performance is prejudicial only upon a showing that but for counsel's errors, there is a reasonable probability that the ultimate result would have been different and that confidence in the reliability of the verdict is undermined." *Little*, 162 F.3d at 860-61. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett*, 796 F.2d at 793.

It is important to note that petitioners bear the burden of proof when asserting a claim for ineffective assistance of counsel. Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective." *Jernigan v. Collins*, 980 F.2d 292, 296 (5th Cir.1993); *see also Clark v. Johnson*, 227 F.3d 273, 284 (5th Cir.2000). If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e., deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong. *Strickland*, 466 U.S. at 697. Furthermore, a claim of ineffective assistance of counsel is a mixed question of law and fact. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir.2002), cert. denied, 538 U.S. 969 (2003). Therefore, this Court must defer to the state court on these claims unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In this case, Petitioner argues that his attorney's decision not to hire an independent expert to test the seized substance for cocaine, as well as the stipulation that the substance tested positive for cocaine cannot be considered sound trial strategy. Petitioner asserts that the

substance was the only physical evidence of the alleged drug transaction, and that his rights were violated when his counsel failed to contest the prosecution's evidence. This Court disagrees; at trial, Officer Dugas, the undercover police officer, testified as follows:

Prosecutor: Back on March, 1, 2002 were you a member of the Sheriff's Office?

Officer Dugas: Yes.

Prosecutor: Where were you working back on that date?

Officer Dugas: The narcotics division as an undercover agent.

\*        \*        \*        \*        \*

Prosecutor: Was you car equipped with any special equipment?

Officer Dugas: Yes.

Prosecutor: What did it have in it?

Officer Dugas: It's like a VCR, audio video capabilities, also a monitor to where my surveillance agents could hear anything I said so they could monitor what was going on. The video -- the truck was also equipped with a camera so that it could take a video outside of the vehicle of what was going on.

\*        \*        \*        \*        \*

[Prosecution played videotape of alleged transaction]

\*        \*        \*        \*        \*

Prosecutor: Now Officer, with the transaction that we saw took place, State Exhibit 1, the cocaine in front of you, is that what the person on the videotape gave you, that the piece of cocaine?

Officer Dugas: Yes, sir. He removed it from his mouth and put it in his hand and then handed it to me.

Prosecutor: And how did you pay for it?

Officer Dugas: With the $20 of US currency right here.

Prosecutor: That $20 bill right there. It would be State Exhibit 4.[7]

Officer Dugas: Yes, sir.

Prosecutor: And do you see the person in court today who is on the videotape who distributed that cocaine to you inside the school property?

Officer Dugas: Yes, sir.

Prosecutor: Point him out.

Officer Dugas: It's the black male with the blue button up shirt.

Prosecutor: Let the record reflect she's identified the defendant.

State Rec., Vol. 3, Trial Transcript pp. 51-60. The videotape of the encounter between Petitioner and the undercover agent was further evidence of a drug sale. Thus, there was overwhelming evidence that Petitioner committed the crime as charged and convicted. Additionally, Petitioner has not alleged that the substance was not actually cocaine base.

Also, the Supreme Court addressed the duty to investigate in *Strickland*, stating that attorneys have "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. And, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. *Id.* Finally, the Supreme Court held, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the

---

[7] This appears to be an error. According to the trial transcript, State Exhibit 4 is the Field Interview Card. State Exhibit 5 is a photocopy of the $20 bill. See State Rec. Vol. 3, Trial Transcript, p. 3. Earlier in her testimony, Officer Dugas identified Exhibit 5 as a copy of the $20 bill. *Id* at 52.

judgment." *Id.* Petitioner has not shown his counsel's failure to hire an independent expert undermined the reliability of the verdict.

Next, Petitioner asserts that his attorney should have objected when Agent Corey Wilson testified that the videotape actually depicted a drug transaction. Essentially, Petitioner argues that his counsel should have objected because Agent Wilson did not observe the transaction the day it occurred, but only from the videotape. Again, Petitioner has not shown his counsel's failure to object undermined the reliability of the verdict. Indeed, the jury was able to determine the credibility of the prosecution's witness by comparing the witness' description of the videotape to what they observed on the videotape. Furthermore, Agent Dugas who actually participated in the drug transaction subsequently testified and confirmed what occurred on the videotape. Consequently, Petitioner's claim for relief is denied because the failure to object cannot be construed as actual prejudice. Stated another way, Petitioner has not shown that but for the failure to object, the result of the proceeding would have been different.

Petitioner's third and fourth ineffective assistance of counsel claims are based on his attorney's failure to object to the introduction of some of the prosecution's evidence, as well as his attorney's failure to vigorously cross-examine the prosecution's witness. Specifically, Petitioner claims that his lawyer should have objected when Agent Wilson testified that Petitioner took the drugs from his mouth before handing them to the undercover officer. Additionally, Petitioner asserts that his attorney should have objected to the prosecution's introduction of the copy of the marked $20 bill which matched the serial number on the $20 bill seized and returned to Petitioner shortly after the transaction was completed. Petitioner argues that his counselor's omissions constituted a failure to subject the prosecution's case to meaningful adversarial testing.

19

First, "[t]he decision whether to cross-examine a witness, and if so, how vigorously to challenge the witness' testimony, requires a quintessential exercise of professional judgment." *Brooks v. Cain*, 2007 WL 2990935, at *12 (E.D.La. 2007) (quoting *Ford v. Cockrell*, 315 F.Supp.2d 831, 859 (W.D.Tex. 2004)). Indeed, "[t]he United States Supreme Court has cautioned courts not to second-guess counsel's decisions on such matters through the distorting lens of hindsight; rather, courts are to employ a strong presumption that counsel's conduct falls within a wide range of reasonable assistance and, under the circumstances, might be considered sound trial strategy." *Id.* (citing *Strickland*, 466 U.S. at 689). In this case, defense counsel vigorously cross-examined Officer Wilson on several issues, and that the defense attorney used the officer's own police report to cross-examine his testimony. Based on an independent review of the trial transcript, it is evident that Petitioner's counsel subjected the prosecution's case to meaningful adversarial testing. And as already noted, Officer Dugas, who actually participated in the drug transaction, testified that the Petitioner took the drugs from his mouth, and $20 was exchanged. Accordingly, Petitioners claim for ineffective assistance of counsel for failing to subject the prosecution's case to meaningful adversarial testing is without merit.

Petitioner's final ineffective assistance of counsel claim alleges that his attorney was deficient in failing to question Daniel Waguespack regarding his qualifications as an expert. Specifically, Petitioner argues that his attorney's stipulation about Mr. Waguespack's qualifications deprived him of his due process rights. Absent any allegation that the stipulation actually prejudiced defendant, or that outcome of trial would have differed in absence of the stipulation, this Court cannot grant *habeas* relief. And, in light of Mr. Waguespack's extensive

history testifying as a forensic expert, the attorney's decision to stipulate to the his qualifications was reasonable.[8] Accordingly, Petitioner's claim lacks merit.

### C. Prosecutorial Misconduct

Petitioner claims that the prosecutor acted improperly when he stated that there was "no evidence seized from [the Petitioner]," and then introduced evidence regarding a marked $20 bill that was in Petitioner's possession after the transaction with the undercover officer. The record reflects that Officer Wilson testified at trial regarding the $20 bill. State Rec. Vol. 3, Trial Transcript, p. 143-44. Wilson stated that he completed a "field interview" card after talking with Petitioner; Wilson recorded the serial number of a $20 bill in Petitioner's possession on the interview card, and apparently returned the bill to the Petitioner. *Id.* Wilson then testified that the serial number he recorded on the interview card matched a serial number on one of the copies of the marked $20 bills that Agent Dugas, the undercover officer, used in her attempts to purchase drugs. *Id.* at 144. While the Court agrees that the prosecution was less than candid with the state court regarding the temporary seizure of the bill, in light of the overwhelming evidence, the error, if any, would not alter or impact the outcome of the case.

### D. Cumulative Errors

Petitioner argues that the effect of the alleged multiple errors at trial is sufficient to prejudice him. In the Fifth Circuit, federal *habeas* relief can only be granted for cumulative errors in state trial court proceedings when the individual errors (1) involved matters of constitutional dimension rather than mere violations of state law; (2) were not procedurally

---

[8] *See e.g., State v. Taylor*, 966 So.2d 631 (La.App. 5 Cir. 2007) (accepting Waguespack as an expert in the field of forensic science); *State v. Shaw*, 785 So.2d 34 (La.App. 5 Cir. 2001) (same); *State v. Davis*, 841 So.2d 952 (La.App. 5 Cir. 2003) (recognizing Daniel Waguespack as an expert in the analysis and identification of narcotics, specifically cocaine).

defaulted; and (3) "so infected the entire trial that the resulting conviction violates due process." *Derden v. McNeel*, 978 F.2d 1453, 1454 (5th Cir. 1992). Claims without merit or that are not prejudicial, cannot be considered, regardless of the total number raised. *Westley v. Johnson*, 83 F.3d 714, 726 (5th Cir. 1996). This Court does not find that any errors of constitutional dimension occurred, and therefore, must deny Petitioner's claim on this ground.

## IV. Conclusion

Having considered the complaint, the record, and the applicable law, it is determined that Petitioner has failed to demonstrate that his state conviction and sentence present grounds for the relief requested. Accordingly, Petitioner's claims are without merit and it is **ORDERED** that the petition of Courtney Packnett be **DENIED WITH PREJUDICE**. Judgment will be entered accordingly.

New Orleans, Louisiana this 10th day of January, 2008.

HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE